**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

Teleke Tessema Yohannes,

      Petitioner

v.

Christopher Chestnut, et al.,

      Respondents

Case No.: 2:26-cv-01122-JAD-NJK

**Order Denying Motion to Dismiss, Denying as Moot Motion to Strike and Motion for Temporary Restraining Order, and Granting Habeas Petition**

[ECF Nos. 9, 10, 13, 15]

Petitioner Teleke Tessema Yohannes was originally a citizen of Ethiopia, from an area that is now the separate country of Eritrea. He arrived in the United States in 1988 after fighting in the Eritrean army for independence from Ethiopia. Yohannes was ordered removed to Ethiopia or Eritrea in 2012, and he was detained for 90 days before Immigrations and Customs Enforcement (ICE) officers released him from custody because they could not effectuate his removal to either country. But in March 2026, ICE arrested Yohannes and detained him at the Nevada Southern Detention Center. On April 13, 2026—three days after he filed a habeas petition contending that he was being illegally and indefinitely detained—ICE transferred him to a detention facility in California, and he has remained there since.

On April 14th, the court appointed counsel for Yohannes and prohibited the respondents from transferring him out of this district except to effectuate a lawful deportation. Yohannes filed a counseled amended petition and a motion for a temporary restraining order (TRO) in mid-May. He argues that ICE has detained him for too long without showing that he is likely to be removed in the reasonably foreseeable future, that the government violated its own regulations when it re-detained him without following established procedures for revoking his order of

supervision, and that ICE's policy of removing noncitizens to a third country without adequate notice or a hearing violates his due-process rights.

The government didn't respond to the merits of Yohannes's petition or TRO motion. It instead filed a motion to dismiss, contending that this court lacks jurisdiction because Yohannes was transferred to California before this court issued any orders in his habeas case. Yohannes moves to strike the motion to dismiss because it contains no legal argument or citation to authority. He also urges the court to consider his petition without further opportunity for the government to respond, highlighting the expedited nature of habeas proceedings.

I deny the government's motion to dismiss because jurisdiction attaches to the court in the district of confinement at the time the petition was filed, and Yohannes was detained in Nevada when he filed his petition. And because I resolve the dismissal motion on its merits, I deny as moot the motion to strike it.

I also grant Yohannes's habeas petition. The government forfeited its ability to respond to the petition's merits by allowing the response deadline to pass without a substantive response. Without the benefit of the government's response, the record reflects that Yohannes has been cumulatively held in immigration custody for more than six months under his final removal order and that there is no reason to believe that his removal will take place in the reasonably foreseeable future. Yohannes has also shown that ICE failed to follow its own regulations when it arrested him and that its third-country-removal policy violates the Fifth Amendment's due-process clause.

So I order Yohannes's release, subject to the conditions of his preexisting order of supervision. I also prohibit the respondents from re-detaining Yohannes absent a demonstrable change in circumstances in ICE's ability to remove him. And I prohibit the respondents from

removing Yohannes to an alternative third country without first providing adequate notice and a meaningful opportunity to seek any available relief for that removal. Finally, because resolving the petition affords Yohannes the relief he seeks, I deny as moot his TRO motion.

**Background**

Teleke Tessema Yohannes "entered the United States in 1988 after having fought in the Eritrean Army for independence from Ethiopia."[1] Eritrea won its independence a few years later, and the part of Ethiopia where Yohannes is from is now in Eritrea.[2] Yohannes was ordered removed from the United States on August 6, 2012.[3] ICE attempted to remove him to Eritrea and Ethiopia, but it couldn't secure Yohannes travel documents to either country.[4] After being detained for 90 days in 2012, he was released on an order of supervision and has been subject to that order for the past 14 years.[5]

On March 17, 2026, Yohannes was arrested by local law enforcement and was transferred to immigration custody two days later.[6] On April 10th, Yohannes filed a pro se petition for a writ of habeas corpus in this district. On April 13th, the respondents transferred

---

[1] ECF No. 9 at 4. The facts in this case are taken from Yohannes's complaint and motion for temporary restraining order, ECF Nos. 9, 10, and the government's limited production of documents, ECF Nos. 13-1, 13-2. The court ordered the government to attach specific documents concerning Yohannes's detention to its response, but it largely did not comply with that order. *See* ECF No. 11 (requiring respondents to attach "(1) [Yohannes's] removal order; (2) his I-213 form; (3) any arrest warrants, revocation-of-supervision notices, and any other documents related to his 2026 arrest"). The government attached only Yohannes's removal order and a form showing that he had been transferred to a California detention facility on April 13, 2026.

[2] ECF No. 9 at 4.

[3] ECF No. 13-2 (Yohannes's removal order).

[4] ECF No. 9 at 4.

[5] *Id.*

[6] *Id.* at 4–5.

Yohannes to the California City Detention Facility in California.  And a day later, I issued an order directing service of the petition, appointing the Federal Public Defender (FPD) to represent Yohannes, and authorizing Yohannes to file a counseled amended habeas petition.[7]  On May 14, 2026, Yohannes filed an amended petition and a TRO motion, seeking his immediate release from immigration custody.[8]  The government filed a motion to dismiss for subject matter jurisdiction, and Yohannes moves to strike that motion.[9]  The government didn't file a substantive response to the petition or TRO motion.

## Discussion

**A.      This court retains jurisdiction over Yohannes after his transfer.**

The government's legal argument in support of its motion to dismiss is one sentence long: "Pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(2), the Amended petition and Motion for Temporary Restraining Order should be dismissed for lack of subject matter and personal jurisdiction."[10]  The respondents seem to assert that this court lacks jurisdiction because "Petitioner was transferred to a holding facility in California on April 13, 2026, before the Court's Order" serving the petition and prohibiting transfer.[11]  Yohannes moves to strike the motion to dismiss because it is unsupported by legal argument or citation to authority.[12]

I deny the respondents' motion to dismiss on its merits.  The court does not determine jurisdiction over habeas petitions like this one based on when the court enters an order in the

---

[7] ECF No. 3.

[8] ECF Nos. 9, 10.

[9] ECF Nos. 13, 15.

[10] ECF No. 13 at 2.

[11] *Id.* at 1.

[12] ECF No. 15.

case. Well-settled law dictates that jurisdiction attaches to the district in which the petitioner was confined when the petition was filed.[13] And Yohannes filed his petition in this district on April 10, 2026—three days before he was transferred to California. So this court retains habeas jurisdiction despite his transfer. And because I've resolved the government's motion to dismiss on its merits, I deny as moot Yohannes's motion to strike.

I also consider the merits of Yohannes's petition without giving the government another opportunity to substantively respond. The government was directed to file a response to the petition and attach specific documents to aid the court in its merits determination. The government chose instead to file a deficient and frivolous motion to dismiss. Permitting a late response (which the government has not asked for leave to file) would frustrate the expedited nature of these habeas proceedings and the efficient use of judicial resources. So I turn to the merits of Yohannes's petition based on the current record in this case.

**B.      Yohannes has shown that he is entitled to relief on his prolonged-detention claim.**

  **1.      *The government has authority to detain noncitizens after they have been ordered removed.***

The Immigration and Nationality Act (INA) and its implementing regulations establish a complex set of rules governing the government's authority to arrest, detain, order removed, and deport noncitizens. 8 U.S.C. § 1231(a) governs the detention of noncitizens who have been ordered removed. It establishes a 90-day "removal period" that begins on "(i) the date the order

---

[13] *See Rumsfeld v. Padilla*, 542 U.S. 426, 441 (2004) (citing *Ex parte Endo*, 323 U.S. 283 (1944)) ("[W]hen the Government moves a habeas petitioner after []he properly files a petition naming h[is] immediate custodian, the District Court retains jurisdiction and may direct the writ to any respondent within its jurisdiction who has legal authority to effectuate the prisoner's release."); *Ozturk v. Hyde*, 136 F.4th 382, 392 (2d Cir. 2025) (interpreting *Padilla* and *Endo* to stand for the proposition that a petitioner's "subsequent transfer" to another district does not "strip the [district of confinement at the time the petition was filed] of habeas jurisdiction").

5

of removal becomes administratively final, (ii) if the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order," or (iii) the date the noncitizen is released from non-immigration detention.[14]  During that 90-day period, detention is mandatory.[15]  The statute gives the government the ability to detain a noncitizen beyond that 90-day removal period under § 1231(a)(6) if he is inadmissible, removable "as a result of violations of status requirements or entry conditions, violations of criminal law, or reasons of security or foreign policy"[16] or has been determined "to be a risk to the community or unlikely to comply with the order of removal."[17]  If those conditions aren't met, the government may release the noncitizen "subject to certain terms of supervision."[18]

> ### 2.    *The Supreme Court has limited the government's statutory authority to indefinitely detain noncitizens awaiting removal.*

Section 1231(a)(6) contains no limit on the length of time that a noncitizen may be held after his removal order becomes final.  But in *Zadvydas v. Davis*, the United States Supreme Court rejected the government's contention that noncitizens can be held indefinitely under § 1231(a)(6) because that interpretation "would raise a serious constitutional problem" under the Fifth Amendment's due-process clause.[19]  To avoid those constitutional concerns, the High Court interpreted the statute to permit continued detention only if a noncitizen's removal is "reasonably

---

[14] 8 U.S.C. § 1231(a)(1)(B).

[15] 8 U.S.C. § 1231(a)(2)(A).

[16] *Zadvydas v. Davis*, 533 U.S. 678, 682 (2001).

[17] 8 U.S.C. § 1231(a)(6).

[18] *Zadvydas*, 533 U.S. at 682 (quoting 8 U.S.C. § 1231(a)(6)) (cleaned up).

[19] *Id.* at 690.

foreseeable."[20]  It determined that six months of post-removal-period detention is presumptively reasonable.[21]  But after six months, the noncitizen must "provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future" to show that his prolonged detention exceeds the government's statutory authority and that he should be released from ICE custody.[22]  If the noncitizen meets that burden, "the government must respond with evidence sufficient to rebut that showing."[23]  And as "the period of prior post-removal confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink."[24]

### 3. *Yohannes has shown good reasons to believe that he will not be removed in the reasonably foreseeable future, and the government has not rebutted that showing with any evidence of likely removal.*

Yohannes has been detained for approximately six months.  He served his 90-day mandatory detention period in 2012 and has been detained for 91 days since his March 2026 arrest.[25]  So Yohannes bears the initial burden of showing that there are "good reason[s] to

---

[20] *Id.* at 699.

[21] *Id.* at 701.

[22] *Id.*

[23] *Id.*

[24] *Id.* (cleaned up).

[25] Several courts have found that prior detention periods must be counted; otherwise, the government could detain, release, and re-detain noncitizens ad nauseam without technically violating *Zadvydas*.  *See, e.g.*, *Shalala v. Mattos*, 2025 WL 3568234, at * 6 (D. Nev. Dec. 14, 2025) (considering the "full amount of time that Petitioner has spent in immigration detention since he was ordered removed" because "[o]therwise, the government could simply circumvent the INA by releasing and re-detaining citizens such that they never reach six months of continuous detention"); *Nguyen v. Scott*, 796 F. Supp. 703, 722 (W.D. Wash. 2025) (noting that, "under the reasoning of *Zadvydas*, a series of releases and re-detentions by the government . . . in essence results in an indefinite period of detention, albeit executed in successive six-month intervals").  I agree with the reasoning of those courts.  *Zadvydas* presumed that detention following removal could reasonably last six months.  If, as here, the noncitizen has been previously detained under the same removal order, the government cannot simply restart the six-

believe that there is no significant likelihood of removal in the reasonably foreseeable future."[26] To meet that burden, Yohannes argues that he has been subject to an order of supervision for approximately 14 years and ICE has been unable to effectuate his removal during that time. He also notes that his removal is frustrated by his tenuous relationship with either country listed on his removal order: Ethiopia has refused to accept him, and Eritrea didn't exist when he left for the United States, so he is not a citizen of that country. He further alleges that, since his March 2026 detention, ICE officials have indicated that they might try to deport him to the Democratic Republic of Congo, but no efforts to effectuate that deportation have been revealed to him and no official third-country designation has been made.[27] I find that Yohannes's allegations are sufficient to establish good reason to believe that he is not likely to be removed in the reasonably foreseeable future.

The government does not meet its shifted evidentiary burden to show that Yohannes's removal is foreseeable. Indeed, it doesn't engage in the *Zadvydas* analysis at all, instead focusing on its failing jurisdictional argument. Its failure to file any substantive response supports the finding that there is no substantial likelihood of his removal in the reasonably foreseeable future. So I grant Yohannes's habeas petition on this basis and order his immediate release.

---

month clock whenever it chooses to re-detain him. So I consider prior detention periods in my analysis.

[26] *Zadvydas*, 533 U.S. at 701.

[27] ECF No. 9 at 5.

**C.      Yohannes has shown that ICE arrested him without following its own re-detention regulations.**

Yohannes also contends that ICE arrested him in a manner that violates its own regulations.  To revoke a noncitizen's order of supervision after his release, the government must follow procedures established in the Code of Federal Regulations.  8 U.S.C. § 241.4 dictates that release may be revoked if the noncitizen "violates any condition of release" or when "appropriate to enforce a removal order or to commence removal proceedings against [a noncitizen]."[28] Section 241.13 permits revocation of release if, "on account of changed circumstances, [ICE] determines that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future."[29]  If ICE decides to revoke release for any of these reasons, it must provide the noncitizen with notice "of the reasons for revocation" and "an initial informal interview promptly after his . . . return to [ICE] custody to afford [him] the opportunity to respond to the reasons for revocation stated in the notification."[30]

Yohannes was released under an order of supervision in 2012.  He alleges that when he was taken into ICE custody in 2026, he was not told why his order of supervision was being revoked, was not given an informal interview, and he was not invited to challenge ICE's reasons for revocation.[31]  The government didn't respond to any of those allegations and failed to comply with this court's order to produce "any arrest warrants, revocation-of-supervision notices, and

---

[28] 8 C.F.R. § 241.4(l)(2)(iii).

[29] 8 C.F.R. § 241.13(i)(2).

[30] 8 C.F.R. §§ 241.4(l)(1); 241.13(i)(3).

[31] ECF No. 9 at 17.

any other documents related to [Yohannes's] 2026 arrest."[32]  I take that failure as a concession that none of the regulatory steps to revoke supervision happened here.

"It is a well-known maxim that agencies must comply with their own regulations."[33] And, as other district courts have found, ICE's re-detention regulations were intended "to provide due process protections to noncitizens following the removal period as they are considered for continued detention, release, and then possible revocation of release."[34]  It's undisputed that those regulations were not followed here.  So I join the growing number of courts that have concluded that the government's failure to abide by its own regulations when arresting a noncitizen warrants his release.  I thus grant Yohannes's habeas petition on this ground, too, and I order his release on the conditions in his preexisting order of supervision.

**D.     Yohannes has shown that the government's third-country-removal procedures violate due process.**

*1.     The government's policy provides notice of third-country removal on a truncated timeline and allows screening for fear-based claims if the detainee affirmatively raises them.*

Once it has been determined that a noncitizen is to be removed from the United States, 8 U.S.C. § 1231(b) governs where he will be removed to.  The first choice is a country "to which the [noncitizen] wants to be removed."[35]  If deportation to that country isn't possible, the immigration judge has a list of other options, including the country from which the noncitizen entered the United States, the noncitizen's last country of residence, the country in which the

---

[32] ECF No. 11.

[33] *United States v. Ramos*, 623 F.3d 672, 683 (9th Cir. 2010).

[34] *See, e.g.*, *Ghafouri v. Noem*, 2025 WL 3085726, at *4 (S.D. Cal. Nov. 4, 2025) (quoting *Santamaria Orellana v. Baker*, 2025 WL 2444087, at *6 (D. Md. Aug. 25, 2025)).

[35] 8 U.S.C. § 1231(b)(2)(A).

noncitizen was born, and others.[36]  If all of those enumerated country options are "impracticable, inadvisable, or impossible," the noncitizen may be removed to "another country whose government will accept" him.[37]  Removal to a country not listed on a noncitizen's removal order is commonly referred to as a third-country removal.

There is one statutory restriction on third-party removal: "the Attorney General may not remove [a noncitizen] to a country if the Attorney General decides that the [noncitizen's] life or freedom would be threatened in that country because of the [noncitizen's] race, religion, nationality, membership in a particular social group, or political opinion."[38]  And the United Nations Convention Against Torture (CAT), ratified by the United States through the Foreign Affairs Reform and Restructuring Act, entitles noncitizens to seek asylum or withholding of removal to a country in which they are likely to be persecuted or tortured.  Normally, a noncitizen raises CAT protections at or directly following his initial removal proceedings.  It appears that no immigration statute or regulation addresses how a noncitizen may raise CAT challenges after ICE determines that deportation to the country on his removal order is impracticable and instead chooses to pursue a third-country removal.

In early 2025, ICE tried to fill that statutory gap.  It issued a policy explaining that, as long as "the United States has received diplomatic assurances from the country of removal that [noncitizens] removed from the United States will not be persecuted or tortured" and those assurances are deemed "credible" by the Department of State, ICE need not give any notice or opportunity to be heard to noncitizens who are being removed to that country.[39]  In all other

---

[36] 8 U.S.C. §§ 1231(b)(2)(E)(i–vi).

[37] 8 U.S.C. § 1231(b)(2)(E)(vii).

[38] 8 U.S.C. § 1231(b)(3)(A).

[39] ECF No. 9-4.

cases, ICE must serve a notice of removal on the noncitizen that informs him of the intended country of removal.[40]  ICE "will generally wait at least 24 hours following service of the notice of removal before effectuating removal," but the policy allows removal on a mere six hours' notice "as long as the [noncitizen] is provided reasonable means and opportunity to speak with an attorney prior to removal."[41]

After the notice of removal is served, the ICE officer "will <u>not</u> affirmatively ask whether the [noncitizen] is afraid of being removed" to that country, but if the noncitizen independently and "affirmatively state[s]" a fear of removal, ICE's Enforcement and Removal Operations division "will refer the case to U.S. Citizenship and Immigration Services (USCIS) for a screening for eligibility for protection" under CAT.[42]  If (through an unidentified process) USCIS determines that the noncitizen has not shown that he "would more likely than not be persecuted on a statutorily protected ground or tortured in the country of removal," the noncitizen will be removed.[43]  If USCIS determines that the noncitizen "has met this standard," ICE will file a motion to reopen immigration proceedings for the "sole purpose of determining eligibility for protection under" 8 U.S.C. § 1231(b)(3) and CAT for the country of removal.[44]

---

[40] Id.

[41] Id.

[42] Id.

[43] Id.

[44] Id.

**2.        *ICE's third-country policy violates due process, so any attempt to remove Yohannes to a third country must be preceded by notice and a meaningful opportunity to be heard.***

Yohannes contends that ICE's third-country-removal policy does not provide adequate notice or an opportunity to be heard, thus violating the Fifth Amendment's due-process clause.[45] "The Due Process clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent."[46] The "fundamental features of due process" are notice and an opportunity to be heard.[47]

The Ninth Circuit has not expressly ruled on what process is due to noncitizens faced with third-country removal. But it has come close. In *Andriasian v. INS*, the Ninth Circuit panel held that immigration officials could not add a new country to the petitioner's removal order without proper notice.[48] It explained that "[f]ailing to notify individuals who are subject to deportation that they have the right to apply for asylum in the United States and for withholding of deportation to the country to which they will be deported violates both INS regulations and the constitutional right to due process."[49] And in the unpublished case of *Najjar v. Lynch*, another Ninth Circuit panel cited *Andriasian* for the proposition that, "[i]n the context of country-of-removal designations, last minute orders of removal to a country may violate due process if a[] [noncitizen] was not provided an opportunity to address his fear of persecution in that country."[50]

---

[45] ECF No. 9 at 18–20. Yohannes also challenges the policy under the Administrative Procedure Act (APA). In that claim, he essentially argues that the government violated the APA by using a procedure that violates due process. *See id.* Because Yohannes's due-process claim on its own justifies release, I do not separately consider whether the government has violated the APA.

[46] *Zadvydas*, 533 U.S. at 693 (cleaned up).

[47] *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1205 (9th Cir. 2022).

[48] *Andriasian v. INS*, 180 F.3d 1033, 1041 (9th Cir. 1999).

[49] *Id.*

[50] *Najjar v. Lynch*, 630 F. App'x 724, 724 (9th Cir. 2016) (unpublished) (cleaned up).

13

District courts have extrapolated these holdings to find that adequate due process requires ICE to (1) provide notice, (2) "ask the noncitizen whether he or she fears persecution or harm upon removal to the designated country and memorialize in writing the citizen's response," (3) "inform the noncitizen that he or she may seek asylum, withholding, and relief under the CAT by filing a motion to reopen with the immigration courts" if the answer to that question is yes, and (4) provide "adequate time to prepare and file a motion to reopen[.]"[51]  Said more succinctly, "[a] noncitizen must be given sufficient notice of a country of deportation that, given his capacities and circumstances, he would have a reasonable opportunity to raise and pursue his claim for withholding of deportation."[52]  District courts across the country have also routinely found that ICE's third-country policy doesn't comport with due process.[53]

It is abundantly clear that the first third-country-removal option—immediate deportation without notice so long as the accepting country gives generalized assurances that it will not torture anyone—doesn't provide adequate due process to a noncitizen who may be removed to that country.  Notice, let alone an opportunity to be heard, is not available to a noncitizen in that situation.  And ICE's second scheme doesn't fare much better.  Though the policy requires notice, it may be given in as little as six hours before the noncitizen's removal, and that notice

---

[51] *Aden v. Nielsen*, 409 F. Supp. 3d 998, 1019–20 (W.D. Wash. 2019); *see also, e.g.*, *Nguyen*, 796 F. Supp. 3d at 727.

[52] *Aden*, 409 F. Supp. 3d at 1009 (citing *Mathews v. Eldridge*, 424 U.S. 319, 348–49 (1976); *Kossov v. INS*, 132 F.3d 405, 408 (7th Cir. 1998)); *see also Kumar v. Wamsley*, 2025 WL 3204724, at *5 (W.D. Wash. Nov. 17, 2025) (finding that this due-process requirement "flows directly from Ninth Circuit precedent" requiring notice of a noncitizen's right to apply for asylum or withholding of removal to a previously undisclosed country).

[53] *See, e.g.*, *Nguyen*, 796 F. Supp. 3d at 728 ("This policy contravenes Ninth Circuit law . . . . It would be impossible to comply both with Ninth Circuit precedent and this policy."); *Vu v. Noem*, 2025 WL 3114341, at *9 (E.D. Cal. Nov. 6, 2025) (collecting cases); *D.V.D. v. DHS*, 2025 WL 1142968 (D. Mass. Feb. 25, 2026).

explicitly does not advise the noncitizen that he may seek withholding, deferral, asylum, or other protections if he fears removal to that third country.  Even if the noncitizen knows to affirmatively state a fear of removal, the policy does not afford him a hearing of any kind unless a USCIS officer determines, through an unexplained process, that the noncitizen would be likely to prove that any of those protections applies.  So this process does not comport with the fundamental requirements of due process.

I also find that Yohannes is likely to face a due-process violation from this policy.  The government previously expressed interest in removing Yohannes to a third country (the Democratic Republic of Congo) once, and there's no indication that his removal to Eritrea or Ethiopia is likely or reasonably foreseeable.  I thus grant Yohannes's petition with respect to his third-country-removal claims and prohibit the federal respondents from rearresting Yohannes with the intention of removing him to a third country unless they comply with the notice-and-hearing requirements established above.

## Conclusion

IT IS THEREFORE ORDERED that the federal respondents' motion to dismiss **[ECF No. 13] is DENIED.**

IT IS FURTHER ORDERED  that petitioner Teleke Tessema Yohannes's motion to strike **[ECF No. 15] is DENIED as moot.**

IT IS FURTHER ORDERED that petitioner Teleke Tessema Yohannes's petition for a writ of habeas corpus under 28 U.S.C. § 2241 **[ECF No. 9] is GRANTED**.  Petitioner **Teleke Tessema Yohannes must be released from detention within three days, subject to the conditions of his preexisting order of supervision.**

IT IS FURTHER ORDERED that respondents must file and serve on defense counsel:

(1) notice of the date, time, and location of Yohannes's release at least 24 hours before the release is set to occur, and

(2) within four days of this order, notice that Yohannes's release was effectuated.

IT IS FURTHER ORDERED that **the federal respondents are enjoined from re-detaining Teleke Tessema Yohannes absent proof of changed circumstances making his removal reasonably foreseeable.**

IT IS FURTHER ORDERED that the **federal respondents are enjoined from removing Teleke Tessema Yohannes to any country not listed on his removal order unless it first complies with the notice-and-hearing requirements detailed in this order**.

IT IS FURTHER ORDERED that counsel for respondents is directed to immediately provide notice of this order to the restrained parties they represent.

IT IS FURTHER ORDERED that Yohannes's motion for a temporary restraining order **[ECF No. 10] is DENIED** as moot.

The Clerk of Court is directed to SEND a copy of this order to the Christopher Chestnut, the Warden of California City Immigration Processing Center in California City, California, and CLOSE THIS CASE.

_____
U.S. District Judge Jennifer A. Dorsey
June 17, 2026